# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: C.B.

FILED

**November 22, 2017**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 17-0613 (Grant County 17-JA-5)

## MEMORANDUM DECISION

Petitioner Custodian T.R., by counsel Jeremy B. Cooper, appeals the Circuit Court of Grant County's June 13, 2017, order terminating his custodial rights to C.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Marla Zelene Harman, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in failing to dismiss him from the abuse and neglect petition.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2017, the DHHR filed an abuse and neglect petition alleging that petitioner and the child's mother, K.H., abused C.B. based upon the child's injuries, which included a subdural hematoma. The petition also alleged that petitioner was providing care for the child at the time the injuries occurred and that his explanations for the child's extensive injuries were not consistent and did not comport with medical evidence. The petition further alleged that the child's mother supported petitioner's version of events despite being informed that his version did not comport with medical evidence and that the child's injuries were the result of non-accidental trauma. Later in January of 2017, the circuit court held a preliminary hearing wherein

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner did not assert any assignment of error regarding termination. As such, we will not address the circuit court's termination of petitioner's parental rights in this memorandum decision.

petitioner waived his rights to the same and moved the circuit court to dismiss him from the proceedings. In support of his motion, he argued that he was not related to the child and was currently prohibited from contacting the mother, due to a domestic violence restraining order. The circuit court denied petitioner's motion and granted him leave to renew the motion at a later time. In February of 2017, the circuit court held an adjudicatory pre-trial hearing wherein petitioner renewed his motion to be dismissed from the underlying proceedings. The circuit court again denied petitioner's motion and found that he could not be dismissed because petitioner was the child's caretaker in the home at the time the child sustained the injuries.

In March of 2017, the circuit court held an adjudicatory hearing at which the mother stipulated to the allegations as alleged in the petition. Petitioner again renewed his motion to be dismissed from the underlying proceedings. In support of his motion, petitioner claimed that he lacked standing given that he was not a biological parent, psychological parent, or step-parent to the child. The circuit court again denied his motion based on its finding that petitioner was the child's caretaker at the time the child sustained the injuries.

Also in March of 2017, the circuit court held another adjudicatory hearing wherein it heard testimony from multiple medical professionals and a police officer. According to the testimony, the child was transported to the Grant Memorial Hospital emergency room by ambulance on January 10, 2017. The child presented with extensive injuries that were the result of non-accidental trauma, including a subdural hematoma; a bloody nose; retinal hemorrhaging; impact bruising on his head; as well as bruising to his inner ear, arms, legs, abdomen, pubis area, scrotum, and back. The circuit court also heard testimony that petitioner was at home with the child on January 10, 2017; reported that the child suffered a fall at the home; found the child unresponsive; and called for an ambulance. Petitioner did not present any testimony or evidence on his own behalf. At the conclusion of the adjudicatory proceedings, the circuit court found that petitioner was the sole caregiver for the child at the time the child sustained multiple, non-accidental injuries; that his explanations for the child's injuries were not consistent with the severity of the child's injuries; and that multiple medical experts testified that the child's injuries were caused by non-accidental trauma.

In May of 2017, the circuit court held a dispositional hearing wherein petitioner renewed his motion to be dismissed from the underlying proceedings and the circuit court again denied his motion. The circuit court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future, noting that he "demonstrated an inadequate capacity to solve the problems of abuse and neglect that exist in this case." On June 13, 2017, the circuit court terminated his custodial rights to the child.[3] It is from that June 13, 2017, order that petitioner appeals.

The Court has previously established the following standard of review in a case such as this:

---

[3]Petitioner's custodial rights to C.B. were terminated below. According to the guardian, C.B.'s biological mother, K.H., was placed on an improvement period. C.B. remains in the care of his non-offending biological father, A.B., and the permanency plan is for the reunification with the mother.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court's denial of petitioner's motion to dismiss him as a party to the abuse and neglect proceedings.

On appeal, petitioner asserts that the circuit court should have dismissed him as a party to the abuse and neglect proceedings below because the "facts indicate that the date of the alleged abuse is actually the only time, ever, that [p]etitioner had been alone with the child." However, because petitioner is not the child's biological or adoptive parent, our focus is on whether he qualifies as a "party . . . having custodial . . . rights or responsibilities." W.Va. Code § 49-4-601(h) (2015). West Virginia Code § 49-1-204 provides that a "custodian" is defined as "a person who has or shares actual physical possession or care and custody of a child, regardless of whether that person has been granted custody of the child by any contract or agreement."

In the instant case, petitioner clearly shared actual physical possession, care, and custody of a child. The mother and the child were living with petitioner in his home at the time the abuse and neglect petition was filed. Petitioner and the mother were involved in a romantic relationship and petitioner was providing care for the child while the mother was working. According to the record, petitioner admitted to a police officer at the hospital that the child was in his sole care at the time the child sustained the injuries. Furthermore, petitioner stood silent at both the adjudicatory and dispositional hearings, despite being afforded the opportunity to present evidence to rebut the allegations against him.

Because the purpose of an abuse and neglect proceeding is remedial, where the parent or guardian fails to respond to probative evidence offered against him/her during the course of an abuse and neglect proceeding, a lower court may properly consider that individual's silence as affirmative evidence of that individual's culpability.

Syl. Pt. 2, *W.Va. Dep't of Health and Human Res. v. Doris S.*, 197 W.Va. 489, 475 S.E.2d 865 (1996).

3

Finally, because the mother's parental rights are still intact, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the disposition order. As this Court has stated,

> "[t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record."

Syl. Pt. 6, *Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875 (2011). Moreover, this Court has stated that

> "[i]n determining the appropriate permanent out-of-home placement of a child under *W.Va.Code* § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found."

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 13, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: November 22, 2017

4

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker